52 CCPA

**Application of Rudolf BRINKMANN TO BROXTEN.**

**Patent Appeal No. 7241.**

United States Court of Customs and Patent Appeals.

Dec. 17, 1964.

Groff & Groff, Washington, D. C., (Emory L. Groff and Emory L. Groff, Jr., Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C., (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 7–11 in application serial No. 837,436, filed September 1, 1959, for "Suspending Means for Fil-ing Folders and the Like." No claim has been allowed.

The invention relates to a simple one-piece hanger for suspending folders, notebooks, etc., and is best understood by referring to appellant's Figs. 1, 2 and 5 reproduced below:

FIG. 1.  FIG. 2.

FIG. 5.

Claims 7 and 10 are illustrative and read as follows, reference numerals having been inserted where appropriate to explain and identify the significant portions of the above figures:

"7. A hanger for filing folders [10] and the like, comprising, a flat body [1], integral folder engaging hooks [3, 14] at one edge providing slots [9, 5] opening in the same direction, and an integral flat rod engaging tongue [7] spaced from the other edge to provide a slot [8] opening in a direction opposite the direction in which the slots [9, 5] of the folder engaging hooks [3, 14] open.

"10. A hanger for storing filing folders [10] on a single rod [15] of angular cross section tilted in a position oblique to a horizontal plane, said folders [10] having front and rear covers joined by a binder portion having an outwardly opening fold [11] whose walls are connected by fastener elements [12, 13] constituting spaced abutments, said hanger comprising, a thin flat elongated body [1] having spaced hooks [3, 14] at one and the same edge whose entrance ends are disposed in the same direction to embrace a related pair of said abutments [12, 13] and provide non-tilting engagement between the hanger and the folder, and a hanger tongue [7] on the edge of said elongated body [1] opposite said hooks [3, 14] and spaced from said edge and also spaced from the fold [11] to provide an entrance end disposed opposite to the entrance ends of said hooks [3, 14] to detachably engage said rod [15]."

Claim 8 is dependent upon claim 7 and calls for a label holder (19) at the end of the body (1) opposite the rod-engaging hook (7). Claim 9 recites essentially the same features as claim 7, viz., body (1), hooks (3, 14), tongue (7), but differs in form and recites that the filing folders are provided with "spaced abutments" (12, 13) with which the hooks (3, 14) engage. Claim 11 is similar to claim 10 with respect to the folders and rod but describes the hook (7) and its relation to the folder in greater detail.

Appellant's brief says:

"The advantages of the invention over the prior art are several. It provides a simple, easily manufactured, one-piece hanger member rather than a hanger comprising a plurality of parts such as the prior art shows. The hanger and related single supporting rod are easy to use and need not be handled with a great degree of care, because the folder engaging hook members provide a quick, positive connection with the staples or other fasteners normally employed with expandable back folders. The single suspension tongue which extends above the back of the folder when the hanger is in assembled relation therewith, provides a simple and positive means of placing the folder on the angularly disposed supporting rod and removing it therefrom."

The references relied on are:

| | | |
|---|---|---|
| Caposi (French) | Addn. 67,911 to Patent No. 1,106,060 | Oct. 14, 1957 |
| Columbia (Br.) | 793,602 | Apr. 16, 1958 |
| Brinkmann (Br.)* | 773,007 | Apr. 17, 1957 |

---

* This is what the Patent Office calls this reference. Actually it is a patent to the appellant, Rudolf Brinkmann To Broxten. To avoid confusion, we will continue to refer to it as "Brinkmann."

All of the claims stand rejected as unpatentable over (1) Caposi alone and (2) Columbia in view of Caposi or Brinkmann. Appellant, who waived oral hearing, refers in his brief to a rejection of the claims for being "incomplete and indefinite," but the solicitor expressly stated in his brief and again at oral hearing that since the examiner's answer and the board's opinion were both silent on this point, the alleged rejection "may be considered moot."

Appellant contends, inter alia, that the Patent Office erred in "using one reference to reject certain claims and then using that same reference combined with others to reject the same claims." While we agree with appellant that if a claim is fully anticipated by one reference, it is unnecessary also to reject on a combination of references, we find nothing legally wrong with the *manner* in which the rejections were presented.

The sole authority cited by appellant is In re Leflar, 85 USPQ 377, in which a Patent Office Supervisory Examiner condemned multiple references "where they tend to confuse the issue." However, we fail to understand how confusion could arise here.

Since we believe the rejection on Columbia in view of Caposi or Brinkmann to be dispositive of the issues before us, we will consider only this rejection.

Caposi (Fig. 4) relates to a file suspension device comprising a body (stippled area) having upper and lower parallel edges. The upper edge has oppositely disposed downwardly-opening notches 2 which engage over the vertical flanges of suspension rods 3. The lower edge of the body is provided with a pair of hooks 16 which support the file 12. An exposed edge of the body (see Fig. 2) has a metal plate 5 for carrying a card holder 7.

Fig. 4

Fig. 2

Columbia also relates to a file suspension device and shows (Fig. 6) a U-shaped suspension hook 2 having a pair of parallel arms 2a, the lowermost of which *engages* a folded portion of a file or is *secured thereto* (Fig. 5) by means of a plate 4 having eyelets 5, or it "may be *slid* into *hems* or *pockets* on the file edge." (Emphasis ours.) The upper arm engages a supporting bar 3 (Fig. 2)

which is horizontal along its length (transverse to the plane of the figure) and inclined in the direction opposite to that of the possible fall of the file to provide greater stability.

Brinkmann relates to folders for use in suspension filing systems and shows (Fig. 7) a *single-piece* file folder carrier 17 provided with four hook noses 18 for engaging staples 5 and metal paper fasteners (not shown) passing through the re-entrant spine 3 of the folder (Fig. 1). The carrier 17 is used to suspend the folder between horizontal rails.

The board, after agreeing with the examiner that all five claims on appeal are drawn to a hanger per se, held that it would be obvious to one of ordinary skill in the art to substitute a pair of spaced hooks, such as those designated 18 in Brinkmann's Fig. 7 or designated 16 in Caposi's Fig. 4, for engagement of the file folder in place of the eyelets provided for that purpose in the hanger of Columbia.

The gist of appellant's contention is that—

"The suggested modification of Columbia in the manner proposed by the Examiner [and board] misses by a wide margin even remotely approximating or suggesting the structure set forth in claims 7–11 * * *. The composite structure resulting from the reconstruction of the references in light of appellant's own disclosure could not be used to accomplish what appellant's simple one-piece hanger and related rod do, but instead would result in a totally inefficient file suspension device, expensive to construct and difficult and unsatisfactory to use."

We have considered the differences between the prior art and the subject matter claimed and agree with the board that the subject matter as a whole would have been obvious within the meaning of section 103. Columbia, the primary reference, shows a relatively *flat single* suspending hook, the upper arm of which may rest on a *tilted flat supporting bar*, as shown in his Fig. 2. The lower arm may be secured to a file cover by means of a plate 4, the actual attachment being made "by any appropriate means of the eyelet or other type * * *." (Emphasis ours.) Instead of eyelets, we believe one skilled in the art might well contemplate forming hooks in plate 4 of the type shown on Brinkmann's carrier 17. These suspending hooks would logically extend in the direction *opposite* to Columbia's upper arm as it engages over a tilted bar to prevent the folder slipping off its supporting hooks. Moreover, we believe a one-piece construction where the entire hanger is made out of flat stock would be obvious to one of ordinary skill. The label holder recited in claim 8 is clearly suggested by the label holder 5, 6, 7 in Caposi. In short, we find the prior art suggests both the structure and functional setting of the claimed invention.

Appellant contends (1) that the *simplicity* of the invention has obscured an appreciation of the true advance made in the art, citing In re Shelby, 311 F.2d 807, 50 CCPA 901, and In re Sporck, 301 F.2d 686, 49 CCPA 1039; (2) that Brinkmann is the only reference "which even approximates" a one-piece hanger and the disclosure there falls short of suggesting that the upper surface of the hanger body be provided with a "rod engaging tongue * * * spaced from the other edge to provide a slot * * * opening in a direction opposite the direction in which the slots * * * of the folder engaging hooks * * * open" and neither Columbia nor Caposi contains any suggestion of these features; and (3) that the present invention constitutes an improvement over appellant's British patent (used here as a secondary reference) since the patented device requires a *pair* of rods or supporting members and a specially adapted hanger member for engaging the noses of the reentrant spine. We point out, in regard to contention (1), that we do not find Shelby and Sporck persuasive of a finding of unobviousness here on different facts; and, in regard to contentions (2) and (3), we believe that appellant erroneously construes his *own* patent as the basic reference. The issue as framed by the examiner and board is not whether it would be obvious to modify the Brinkmann device, although that could have been considered, but rather, whether or not it would be obvious to modify the Columbia device in view of the Brinkmann and Caposi disclosures. For the reasons set forth above, we hold that the modifications are only such that the claimed invention as a whole would have been obvious at the time the invention was made to one of ordinary skill in the art.

The decision of the board is affirmed.

Affirmed.