HUGHES TOOL COMPANY, Plaintiff-Appellant,

v.

INGERSOLL–RAND COMPANY, Defendant-Appellee.

No. 28704.

United States Court of Appeals, Fifth Circuit.

Feb. 5, 1971.

Rehearing Denied March 17, 1971.

Paul E. Harris and Andrews, Kurth, Campbell & Jones, Houston, Tex., for appellant.

Jefferson D. Giller, Houston, Tex., John M. Calimafde, New York City, Sandoe, Hopgood & Calimafde, New York City, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., Carl R. Horten, Princeton, N. J., of counsel, for appellee.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

Hughes Tool sued Ingersoll-Rand charging infringement of Claims 3 and 7 of plaintiff's United States patent, which is Kelly, No. 3,185,228, directed to a bit for use in percussion drilling.[1]

In percussion drilling the bit is mounted beneath a pneumatic tool which delivers rapid blows to the top of the bit, driving the cutting elements of the bit downward into the formation being drilled.

Plaintiff's claims in issue are 3 and 7. Those claims, plus Claim 1 (which is referenced in Claim 3) are:

CLAIM 1

A rotary-percussion bit which does not require repeated dressing to maintain its usefulness throughout its life comprising:

a metallic body portion having an outer peripheral surface and a lower surface extending generally transverse the longitudinal axis of said bit;

a plurality of discrete, wear resistant inserts rigidly secured in said body with cutting tips protruding beyond said lower surface;

said inserts being disposed in spaced apart relationship in circumferential rows each containing at least one insert to disintegrate the borehole bottom during rotation and percussion;

the inserts in the outermost of said circumferential rows being disposed at an acute angle with the longitudinal axis of the bit so that the inner ends of such inserts are buried within the body in spaced relationship to said peripheral surface and the protruding cutting tips extend beyond both said peripheral surface and said lower surface at about the intersection thereof, whereby the wedging which would otherwise occur in subjecting said outer peripheral surface to abrasive contact with the borewall of the hole is avoided;

CLAIM 3

The rotary-percussion bit of claim 1 in which the outer peripheral surface of said bit body has a plurality of longitudinal slots to promote wearing of said surface by flushing fluid and cuttings at least as fast as the rate of wear of the outer portions of said outermost row of inserts.

CLAIM 7

A rotary-percussion bit comprising:

a body having an outer peripheral surface and a lower surface extending generally transverse the longitudinal axis of said bit;

said bit body having an internal flushing fluid passageway system which includes at least one longitudinal passage extending from the top of the body and terminating in a port in one of said surfaces;

the intersection of said surfaces being slightly chamfered by a surface making an acute angle with each of said outer peripheral surface and said bottom surface;

a plurality of discrete, wear resistant inserts rigidly secured in said body with cutting tips protruding below said lower surface;

said inserts being disposed in spaced apart relationship in circumferential rows each containing at least one insert to disintegrate the borehole bottom during rotation and percussion;

the inserts of the outermost of said rows being disposed at an angle with the longitudinal axis of the bit so that the inner ends of the inserts are buried within the body in spaced relation from both of said bottom and outer peripheral surfaces and the cutting tips protrude from said chamfered surface;

said outermost row being thus disposed to protrude both axially and radially of the bit body to cut the outermost portion of the hole bottom and to prevent the bit from wearing into a wedging configuration.

The District Court found that Ingersoll-Rand had infringed as charged but also held the Kelly patent invalid for anticipation under 35 U.S.C. § 102 and for obviousness under 35 U.S.C. § 103. Additionally, the court held Claim 3 invalid because of its being vague, indefinite and uncertain.[2] We affirm on the finding that the Kelly patent was anticipated by Brown, No. 2,725,216, the prior art on which the District Court chiefly relied for its conclusion of Kelly's lack of novelty. Views of Kelly and Brown appear at the end of this opinion.

"[N]ovelty is lacking if all the elements of the patent, or their equivalents are found in a single prior art structure where they do substantially the same work in the same way." Kiva Corp. v. Baker Oil Tools, Inc., 412 F.2d 546, 552 (5th Cir.) cert. denied, 396 U.S. 927, 90 S.Ct. 262, 24 L.Ed.2d 226 (1969), quoting A. J. Industries, Inc. v. Dayton Steel Foundry Co., 394 F.2d 357 (6th Cir. 1968). See also Amphenol Corp. v. General Time Corp., 397 F.2d 431 (7th Cir. 1968); Bain v. M. A. Hanna Co., 331 F.2d 974 (6th Cir. 1964); 1 Walker on Patents § 57 (2d Ed. 1964). Anticipation (lack of novelty) by a prior art structure is largely a question of fact, Sterner Lighting, Inc. v. Allied Elec. Supply, Inc., 431 F.2d 539 [5th Cir. Aug. 5, 1970]. We find no basis on which the District Court's findings of anticipation of Kelly by Brown can be said to be plainly erroneous under Fed. R.Civ.P. 52(a). See Spec-Flo Mfg. Corp. v. Braniff Airways, Inc., 430 F.2d 74 (5th Cir. July 23, 1970).

As to Brown, the District Court found:

The most pertinent reference, however, is No. 2,725,216 to Brown. This patent discloses a rotary percussion bit with a heel row of buttons angularly disposed and extending below the bottom surface and beyond the peripheral surface.

The appellant attacks the Brown reference on two grounds. First, in Brown the buttons—which protrude from the the material in which the drilling is occurring—are of steel, and are a part of main body of the bit, and strike and cut the bit body, while in Kelly the cutting instruments are tungsten carbide inserts implanted in the main body. It is readily seen that Kelly's inserts and Brown's buttons are very similar in structure, shape, and size. The differences between the two are in material used and in the mechanical concept of an implanted cutting instrument versus the cutting instrument fabricated as part of the body of the bit. The substitution of one material for another or the substitution of mechanical equivalents is not patentable. See Dow Chem. Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973 (1945); Pullman, Inc. v. ACF Indus. Inc., 393 F. 2d 83 (2d Cir. 1968); National Connector Corp. v. Malco Mfg. Co., 392 F.2d 766 (8th Cir. 1968); McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381 (10th Cir. 1965), cert. denied, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1966); B. F. Goodrich Co. v. United States Rubber Co., 244 F.2d 468 (4th Cir. 1957); 1 Walker on Patents § 57 (2d Ed. 1964). The District Court found that the use of inserts of hard material—such as hardened steel, diamonds and tungsten carbide—implanted in the body of a drill bit for doing the actual cutting is not new and has been known in the percussion bit art (and other arts as well) for many years. Considering the purposes of the buttons and the inserts—both employed as cutting instruments—the qualities of their combination with the other ingredients, the functions they are intended to perform, and whether persons reasonably skilled in the art would have known of the interchangeability of the two ingredients,[3] Graver Tank & Mfg. Co. v.

---

2. 305 F.Supp. 1119 (S.D.Tex.1969).

3. The District Court found that the substitution of tungsten carbide inserts for the steel buttons was "perfectly obvious."

Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 857, 94 L.Ed. 1097, 1103 (1949), it is clear that the two are mechanical equivalents. No claim is made in Kelly that the quality of implantation is a departure from the prior art and, as pointed out above, the District Court found that implants of cutting material had been known in the prior art for many years.

Hughes' second ground for challenging Brown as anticipating prior art is that Brown refers to cutting the sidewall of the borehole, while Kelly teaches that its outermost angulated row of bit inserts (the "heel row") are so arranged that during rotation and percussion they will strike and disintegrate the outermost portion of the bottom of the borehole. Appellant contends that Kelly thereby would avoid the wedging of the bit which would otherwise occur if the outer peripheral surface of the main body were subject to abrasive contact with the wall of the borehole. The District Court found that the distinction in the two patents which might produce this operational difference depends upon the angle at which the heel row of buttons are set into the body of the bit. The District Court found that Kelly, while referring to variations in the angle, specifies no particular angle but only an acute angle. The trial judge then concluded that cutting into the drilled material at the intersection formed by the bottom and the sidewall of the hole, as opposed to cutting into the sidewall above the intersection—by reason of a differing angulation of the buttons—is a distinction so subtle as to be immaterial. We note also that the District Court pointed out that one of the alternatives of Kelly showed a bit with a concave bottom, the heel row of buttons of which would cut further up the side wall from the wall-bottom intersection than is shown by Brown.

■ We are aware, as was the District Court, of the presumption of validity springing from the fact that Brown was cited by the patent office. *See* Sterner Lighting, Inc. v. Allied Elec.

Supply, Inc., *supra*; Beckman Instruments, Inc. v. Chemtronics, Inc., 428 F.2d 555 (5th Cir. April 14, 1970), cert. denied, 400 U.S. 956, 91 S.Ct. 353, 27 L. Ed.2d 264 (1970). But the presumption may be overcome. We are not able to say that the District Court erred in finding that in this instance it was overcome.

Because of our conclusion as to Brown, we need not consider the finding that Kelly also was anticipated by Malherbe, No. 2,579,628. The District Court concluded also that Claims 3 and 7 were invalid under 35 U.S.C. § 103 since they were nothing more than obvious differences from the prior art, and that the claims were invalid as being too vague. Because of our conclusion concerning anticipation by Brown, it is unnecessary for us to discuss the § 103 issue of obviousness or the issue of vagueness. We do note, however, that it is strenuously urged the District Court failed to comply with the correct process for reaching a conclusion on § 103, as articulated in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545, 556 (1966):

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

In Anderson's Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969), the Supreme Court has reiterated that these requirements must be strictly observed, and as recently as Waldon, Inc. v. Alexander Mfg. Co., 423 F.2d 91 (5th Cir. 1970), this Circuit has restated the necessity of such observance and the deficiency of a broad, conclusory analysis.

■ Since we affirm the finding of invalidity, we need not consider the question of infringement. *See* Waldon, Inc. v. Alexander Mfg. Co., *supra*;

Swofford v. B & W, Inc., 395 F.2d 362 (5th Cir. 1968).

.Affirmed.